# Richmond

JARETTE ARLO DEAN v. COMMONWEALTH OF VIRGINIA.

March 10, 1969.

Record No. 6961.

Present, All the Justices.

*Donald D. Litten (J. Lynn Lucas, on brief), for plaintiff in error.*

*A. R. Woodroof, Assistant Attorney General (Robert Y. Button, Attorney General, on brief), for defendant in error.*

GORDON, J., delivered the opinion of the court.

Someone shot and killed Larry Elwood Lam on a public highway

near Harrisonburg during the early morning of February 20, 1966. In the county jail later that morning, Jarette Arlo Dean confessed that he had shot Lam. At Dean's trial in March 1967, the jury found him guilty of second degree murder and fixed his sentence at five years in the penitentiary. Dean appeals from a final order entered April 10, 1967, sentencing him in accordance with the jury verdict.

■ The principal question raised on this appeal is whether Dean's confession, which was admitted in evidence at his trial, resulted from custodial interrogation within the meaning of *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.ed.2d 694 (1966). Other questions stem from (a) the court's refusal to examine the prospective jurors separately and to ask them certain questions on the voir dire and (b) the court's admitting evidence that Dean had refused to testify at the trial of Barbara Shifflett, another person charged with murdering Lam.

## I. Confession

Several hours after Lam was shot, two investigating officers went to Barbara Shifflett's house, where Dean, one Floyd Smith, Barbara and another woman were staying. After a brief conversation, the officers asked Dean and Smith to come with them to the Harrisonburg jail so that they could talk to Dean and Smith there. Dean and Smith agreed, and rode to the jail in the police officers' car.

On arrival at the jail, the officers questioned Dean alone. After Dean had denied any knowledge of Lam's death, the officers sent him to the jailer's office and began to question Smith. While this questioning was in progress, Dean sent word that he wished to speak to the officers. Shortly thereafter, and apparently without any further questioning, Dean confessed that he had shot Lam.

The Commonwealth concedes that Dean was not given the warnings required by *Miranda* v. *Arizona, supra*. The Commonwealth contends, however, that *Miranda* is not applicable here because (1) Dean was not in custody when he made his confession and (2) his confession did not result from questioning by the police.

*Miranda* applies to "custodial interrogation"—"questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way". *Miranda* v. *Arizona, supra* at 444, 86 S.Ct. at 1612, 16 L.ed.2d at 706. Although Dean had not been told he was under arrest, one of the officers testified that Dean was in his custody at

the jail and would not have been permitted to leave to jail.[1] Questioning under such circumstances constitutes "custodial interrogation" as defined by *Miranda*. *Johnson* v. *Commonwealth*, 208 Va. 740, 160 S.E.2d 793 (1968).

*Miranda* does not apply to "any statement given freely and voluntarily without any compelling influences". *Miranda* v. *Arizona, supra*, at 478, 86 S.Ct. at 1630, 16 L.ed.2d at 726. But since Dean confessed after questioning by the police and while he was still in custody, his confession was subject to compelling influences and should not have been admitted in evidence. *Durham* v. *Commonwealth*, 208 Va. 415, 158 S.E.2d 135 (1967).

## II. Voir Dire

■ The court denied defense counsel's request that he be permitted to examine each prospective juror separately, out of the presence of the other prospective jurors. Counsel recognizes that sequestration of prospective jurors usually lies within the court's discretion. Nevertheless, he argues that because Dean was charged with a capital offense that had caused "considerable speculation, discussion and comment in the community", the court abused its discretion by denying the request for sequestration.

Code § 8-199, which governs the voir dire, does not require sequestration of prospective jurors. See *Harmon* v. *Commonwealth*, 209 Va. 574, 166 S.E.2d 232, decided today (court may examine prospective jurors collectively). Since there was no showing that sequestration was necessary to obtain an unbiased and unprejudiced jury, the court did not err in refusing to sequester the prospective jurors.

Defense counsel also assigns error to the court's refusal to ask certain questions submitted for the voir dire. One of the refused questions was: "Did you know Larry Lam in his life time, or any member of his family?" Because the term "any member of his family" has different meanings,[2] the sense in which it was used should have

---

[1] "Q. He was at that time [when Dean was sent to the jailer's office], for practical purposes, in your custody, wasn't he?

"A. For practical purposes, yes sir.

"Q. You weren't about to let him go?

"A. No sir.

"Q. And if he had wanted to go he would not have gotten away right then, would he?

"A. It's not likely."

[2] The meanings of *family* include "parents and their children, whether dwelling

been explained. Otherwise, the question was proper if the information sought had not been obtained by other questions asked by the court. We find no error in the court's refusal to ask other questions requested by counsel.

### III. Dean's Refusal to Testify at Another Trial

■ Barbara Shifflett, who was with Dean on the morning Lam was shot, was also tried for murdering Lam. While on the witness stand at his own trial, Dean was asked, "At [Barbara's trial], didn't you, under oath, decline to testify on the ground it might incriminate you?" The court overruled defense counsel's objection and required Dean to answer the question. He answered, "Yes".

During closing argument the Commonwealth's attorney commented on Dean's refusal to testify at Barbara's trial. Defense counsel objected to that comment, and the court overruled the objection.

The question raised by counsel, and now before us, is whether the evidence and the comment on Dean's refusal to testify impaired his constitutional right against self-incrimination.[3]

In 1926 the Supreme Court held that a defendant who testified at the second trial of his case could be questioned about his refusal to testify at his first trial, without impairing his Fifth Amendment right against self-incrimination. *Raffel v. United States*, 271 U.S. 494, 46 S. Ct. 566, 70 L.ed. 1054 (1926). In 1957, however, the Court held that a defendant was improperly questioned at his trial for tax-fixing about his refusal to testify before a grand jury that was investigating corruption in the Bureau of Internal Revenue. *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.ed.2d 931 (1957).

The majority in *Grunewald* refrained from overruling *Raffel*, basing its holding primarily on the conclusion that the defendant's testimony at his trial was not inconsistent with his previous refusal to

together or not", "the spouse and children of one person", "any group of persons closely related by blood, as parents, children, uncles, aunts, and cousins", and "all those persons considered as descendants of a common progenitor". *The Random House Dictionary of the English Language*, 514 (1966 ed.).

[3] Counsel did not object on the basis of Code § 19.1-267, which reads: "In a criminal prosecution, other than for perjury, or in an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination, unless such statement was made when examined as a witness in his own behalf." Va. Code Ann. § 19.1-267 (1960 Repl. vol.). See, in that connection, *Smith v. Commonwealth*, 136 Va. 773, 118 S.E. 107 (1923), and *Thaniel v. Commonwealth*, 132 Va. 795, 111 S.E. 259 (1922).

testify before the grand jury.[4] But four Justices, all of whom are now members of the Court, were of the opinion that *Raffel* should be overruled:

> "[We] can think of no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them. It seems peculiarly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the Constitution. To the extent that approval of such a rule in Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054, has vitality after Johnson v. United States, 318 U.S. 189, 196-199, 63 S.Ct. 547, 553-554, 87 L.Ed. 704, [we] think the Raffel case should be explicitly overruled."

353 U.S. at 425-26, 77 S.Ct. at 984-85, 1 L.ed.2d at 955 (concurring opinion).

We interpret cases decided after *Grunewald* as indicating that the Supreme Court has adopted the reasoning of the concurring opinion in *Grunewald*, rather than the reasoning of *Raffel*. E.g. Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.ed.2d 574 (1966); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.ed.2d 106 (1965). We therefore hold that the Fifth Amendment precludes the prosecution from using an assertion of the privilege against self-incrimination to discredit or convict the person who asserted it.[5]

We also interpret Section 8 of the Virginia Constitution, which provides that no person shall "be compelled in any criminal proceeding to give evidence against himself", as precluding the use of an assertion of such privilege to discredit or convict the person who asserted it.

Accordingly, evidence should not have been admitted and comment should not have been made concerning Dean's refusal to testify at Barbara Shifflett's trial.

---

[4] See, in this connection, *Stewart v. United States*, 366 U.S. 1, 7, n.14, 81 S.Ct. 941, 945, n.14, 6 L.ed.2d 84, 88, n.14 (1961).

[5] In view of this holding we need not consider whether the same result would be reached under the reasoning of the majority in *Grunewald v. United States*, *supra*.

Our order will reverse the judgment appealed from and will remand the case for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*