**Alexandria**

HARRIOT MIER, s/k/a

HARRIET MIER

v.

COMMONWEALTH OF VIRGINIA

No. 0476-90-4

Decided July 1, 1991

828

COUNSEL

James B. Slaughter, Senior Assistant Public Defender (Office of the Public Defender, on brief), for appellant.

Janet F. Rosser, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

WILLIS, J.—The appellant, Harriot Mier, was indicted for the intentional concealment and conversion of merchandise, valued in excess of $200, without having paid the purchase price, in violation of Code § 18.2-103. She moved to suppress as evidence inculpatory statements made by her to private security agents who had not advised her of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). This motion was denied and she was convicted of petit larceny. On appeal, she contends that the trial court erred in denying her motion to suppress the inculpatory statements. We find no error and affirm the judgment of the trial court.

■ "On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

On December 10, 1989, Mark Powell, a security guard at Nordstrom department store at Tyson's Corner, saw the appellant in the store pushing a baby in a stroller and carrying an appar-

ently empty shopping bag. She was accompanied by Rosario Camancho and a small child. Powell saw the appellant select a sweater. As he moved to obtain a better view, the sweater disappeared. The appellant and Ms. Camancho moved to the Town Square department, where they were observed by Melissa Bridge and Kim Longest, two other security agents of Nordstrom. The appellant selected an item and entered a fitting room. Ms. Longest was able to see into the room and saw the appellant put items into the bottom of the shopping bag. The appellant and Ms. Camancho then moved to the Petite Focus department. There, the appellant picked up two black sweaters and entered a fitting room followed by Ms. Camancho. Looking through slots in the door, Ms. Bridge and Ms. Longest could see hands rolling up merchandise and concealing it in the shopping bag. After the appellant and Ms. Camancho left the dressing room, Ms. Bridge entered and determined that the two black sweaters which the appellant had taken into the room were not there.

The appellant and Ms. Camancho left the Petite Focus department without paying for any merchandise. They then left the store. Outside, they were stopped by Ms. Bridge, Ms. Longest and Powell, who identified themselves as security agents for Nordstrom and asked the appellant and Ms. Camancho to accompany them to the security office.

Inside Nordstrom's security office, Ms. Bridge recovered from the shopping bag the two black sweaters from the Petite Focus department and a sweater from Men's Sportswear. Powell asked the appellant why she did it. The appellant replied, "This is my first time. I will never do it again." This statement, which appellant sought to suppress, was made prior to the arrival of Fairfax County police officers, who came on the scene and took custody of appellant and Ms. Camancho about fifteen to thirty minutes after their apprehension by Nordstrom's security agents. At no time did the Nordstrom's agents give to the appellant the advice required by *Miranda* as a predicate to custodial police interrogation.

The appellant's statement to Nordstrom's agents did not result from any coercion exerted upon her. Her statement was freely made in response to a question simply put, without the application or threat of force. The issue raised by this appeal is whether that question was put and the answer given under circumstances amounting to custodial police interrogation. The trial court found

that they were not. We agree.

 *Miranda* is directed toward police conduct. *City of Grand Rapids v. Impens*, 414 Mich. 667, 673, 327 N.W.2d 278, 280 (1982); *Tarnef v. State*, 512 P.2d 923, 934 (Alaska 1973). "The 5th Amendment privilege against self-incrimination, which the *Miranda* warnings are designed to protect, has never been held to apply where a private store detective questions a person without any participation by the government." *People v. Ray*, 65 N.Y.2d 282, 286, 480 N.E.2d 1065, 1067, 491 N.Y.S.2d 283, 285 (1985). "To hold that the conduct of [a] private store detective was governed by *Miranda* would be an extravagant expansion of the intended scope of that decision, and would constitute an unnecessary and unauthorized interference with the right of a merchant to protect his property by lawful means." *Id.* at 287, 480 N.E.2d at 1068, 491 N.Y.S.2d at 285. "The duty of giving '*Miranda* warnings' is limited to employees of governmental agencies whose function is to enforce the law, or to those acting for such law enforcement agencies by direction of the agencies; . . . it does not include private citizens not directed or controlled by a law enforcement agency, even though their efforts might aid in law enforcement." *State v. Bolan*, 27 Ohio St. 2d 15, 18, 271 N.E.2d 839, 842 (1971).

Appellant has relied upon several cases holding that the *Miranda* requirement should be extended to investigations by non-governmental agencies. However, those cases all involve special circumstances such that the non-governmental agents involved were deemed to be police officers.

In *People v. Elliott*, 131 Misc. 2d 611, 501 N.Y.S.2d 265 (Sup. Ct. 1986), there was a report of a firearm observed in an automobile parked in a hospital parking lot. The hospital security office called the police, but directed a hospital security guard to go to the car to await the arrival of the police. The guard was told that the police had been called and were on the way. At the car's location and prior to the arrival of the police, he interrogated the defendant. In holding that the questioning by the guard should be considered a police interrogation, the court said:

Here, there was, in the opinion of this court, coordinated private-public law enforcement involving the investigation of a crime incident. The parking lot investigation and response

here, by the hospital security officer, did accommodate police objectives. It should be contrasted with the traditional role of protecting hospital property or keeping order within the hospital, etc.

*Id.* at 617, 501 N.Y.S.2d at 270. This holding derived from the finding that the questioning by the hospital guard was a part of a private-public police investigation, which carried the guard outside of his traditional private role.

In *People v. Glenn*, 106 Misc. 2d 806, 435 N.Y.S.2d 516 (Crim. Ct. 1981), the court found on the facts that the store's detention and interrogation policy was a subterfuge to circumvent the suspect's constitutional rights. The record in this case requires no such finding.

In *Tarnef v. State*, 512 P.2d 923 (Alaska 1973), the court found that the interrogating private arson investigator had been working so closely with the police that he considered himself a part of the official team investigating the case. He had acquired access to the defendant through the police and had agreed to turn over to the police any statement that he secured. His interrogation of the defendant occurred at the jail.

The Fifth Amendment guarantees that no person shall be compelled in any criminal case to be a witness against himself. This proscription is not offended by the receipt into evidence of a confession freely and voluntarily given. *Miranda* does not alter this fundamental principle. It addresses a specific concern. Recognizing the intimidating and coercive influences which naturally flow from official detention and custodial police interrogation, *Miranda* requires, as a prerequisite to such interrogation, that prescribed advice be given to the accused for the specific purpose of ensuring that any statement made by him is made freely and voluntarily. The Fifth Amendment is satisfied if an accused is permitted "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Estelle v. Smith*, 451 U.S. 454, 467-68 (1981).

The appellant's confession did not spring from circumstances identified by *Miranda*. Her interrogation consisted of a single, simple question unaccompanied by force or threat. She was not under the intimidating influence of official custody or police con-

frontation. Her answer, the subject confession, was freely and voluntarily given.

In *Wansley v. Commonwealth*, 210 Va. 462, 171 S.E.2d 678, *cert. denied*, 399 U.S. 931 (1970), the accused, a seventeen-year-old charged with rape and robbery, was in the police station lock-up. A probation officer took his mother to see him. The defendant's mother asked, "Buddy, did you do it?" The defendant answered, "Yes." Citing *Miranda*, the defense argued that the probation officer should not have been permitted to testify as to this question and answer, given by the accused while in custody. The Supreme Court said:

> Suffice it to say, in rejecting this contention, that counsel overlook or brush aside the fact that Wansley's spontaneous admission resulted from an unprompted question asked by his mother, not from questioning by [the probation officer] or the police or any other person. None of the Supreme Court cases cited by counsel, or any other Supreme Court case of which we are aware, holds that the Constitution precludes evidence of an admission made by a juvenile or adult under those circumstances.

*Id.* at 471, 171 S.E.2d at 684.

In *Williams v. Commonwealth*, 211 Va. 609, 179 S.E.2d 512 (1971), the accused, without being given the *Miranda* warning, was interrogated in an upstairs room by the police. Thereafter, as the officers were leading the accused downstairs, his stepmother asked, "Robert, did you shoot that man?" The defendant answered, "Yes, Mama, I shot the man." Asserting that he was in police custody and had not received the *Miranda* warning, the defendant contended that this admission should not have been received into evidence. He relied upon *Dean v. Commonwealth*, 209 Va. 666, 166 S.E.2d 228 (1969). Rejecting this argument, the Supreme Court said:

> But *Miranda* and *Dean* do not stand for the proposition that once the police have interrogated an unwarned subject, all statements thereafter made by him are inadmissible. Both decisions are limited to statements resulting from the compelling influences of police interrogation, and by police interrogation is meant "questioning initiated by law enforcement

officers." 384 U.S. at 444.

*Miranda* specifically recognizes the admissibility of a statement if it is made "in the unfettered exercise of [the suspect's] own will." 384 U.S. at 460. And *Dean* recognizes the admissibility of a "statement given freely and voluntarily without any compelling influences." 209 Va. at 668, 166 S.E.2d at 230.

*Id*. at 611, 179 S.E.2d at 514.

Both *Wansley* and *Williams* confirm that *Miranda*'s application is limited to interrogation by law enforcement personnel.

Nordstrom was authorized by law to employ security officers to protect its property and to detain apprehended shoplifting suspects briefly until police could be called. *See* Code §§ 18.2-105 and 18.2-105.1. The store's policy was to prosecute suspects thus apprehended and delivered to police custody. The appellant argues that Nordstrom's security agents should therefore be considered police officers. However, Ms. Bridge, Ms. Longest and Powell were private agents. Nordstrom, not the government, selected, employed and controlled them. Their duty was to serve Nordstrom and to protect its interests. They had no duty or authority with respect to the general enforcement of public order. While it was Nordstrom's policy to invoke the protection of the law and the police and to vindicate its rights through public process, the duty of its agents did not necessarily require police involvement or criminal prosecution. *See F.B.C. Stores, Inc. v. Duncan*, 214 Va. 246, 198 S.E.2d 595 (1973). The cooperation which those agents gave to the police was merely coincident to the performance of their private duties. Their apprehension and detention of the appellant was an encounter between private citizens, not raising the suggestion of intimidation imputed to a confrontation between a private citizen and the police authority. The results of the interrogation conducted in this case,[1] uncoerced in fact, though obtained in the absence of the *Miranda* warning, were properly received into evidence.

---

[1] Our decision is necessarily based upon the facts as disclosed in the record. We do not comment on whether, or under what circumstances, a private security agent cooperating with the police or working in conjunction with official law enforcement agencies might be required to give the *Miranda* warnings prior to questioning.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Duff, J., and Moon, J., concurred.