COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Senior Judge Hodges
Argued by teleconference


WILLIAM J. CUOZZO, S/K/A
 WILLIAM JAY CUOZZO
                                    MEMORANDUM OPINION[*] BY
v.   Record No. 1843-98-2          JUDGE ROBERT P. FRANK
                                        AUGUST 15, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                    John F. Daffron, Jr., Judge

            Thomas P. Collins (Eck, Collins & Marstiller,
            on brief), for appellant.

            Kathleen B. Martin, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     William J. Cuozzo (appellant) appeals two convictions for

taking indecent liberties with children pursuant to Code

§ 18.2-370 and three misdemeanor convictions for making obscene

or threatening phone calls after a bench trial.  On appeal,

appellant contends the trial court erred in:  1) denying his

motion to suppress, 2) finding the evidence sufficient under

Code § 18.2-370 to convict appellant on the Kida charge, and 3)

failing to exclude witnesses and permitting evidence of

unadjudicated criminal conduct at sentencing.  We reverse and

remand appellant's convictions.
--------

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

# I. BACKGROUND

During September and October of 1996, appellant allegedly made phone calls to five children between seven and eleven years of age. He allegedly asked the children to perform various sexual acts and, on some occasions, threatened harm to the children or their parents if they did not comply with his requests.

On October 28, 1996, appellant was incarcerated in the Hanover County Jail on other charges. Detective Galen Hartless of the Chesterfield County Police Department advised appellant of his Miranda rights and interviewed appellant in the jail as part of the investigation of the phone calls.

On November 13, 1996, Detective Hartless again interviewed appellant in the Hanover County Jail. The detective was accompanied by Investigator Schwartz of the Hanover County Sheriff's Department. Detective Hartless advised appellant of his Miranda rights, and appellant signed a Miranda Right Form acknowledging that he understood his rights. According to the transcript of the taped interview, the following exchange occurred at the beginning of the interview:

> HARTLESS: You're incarcerated, of course you know that. I know you know your rights, but I'm gonna read 'em to you again. It's eleven-thirteen-ninety-six, approximately ten-forty-five p.m. I'm Detective G.B. Hartless, Investigator Bob Schwartz, Hanover County Sheriff's Department and also present is Mister William Jay Cuozzo. Mister Cuozzo, you have the right to remain silent

-

and make no statement to me and your silence will be guarded by the police.  Any statement you make without a lawyer can be used against you.  You have the right to the presence of a lawyer durin' this or any future interview the police might have with you.  The lawyer be [sic] one of your choosin' which you hire or if you do not have money to hire a lawyer, the court will appoint one for you.  Do you understand your rights?  Can you initial (inaudible) formality.  Just want to make sure you're reminded of it.  Initial that for me.

HARTLESS:  Let me explain some things to you (bell ringing) (inaudible).  I just want you to listen, ok, then maybe we can talk (bell ringing) (inaudible) ringing'll go off.  Now, you know what I'm investigatin' as we talked before if you remember, ok.  Now, in this investigation, I've found out a lot of things about you Mister Cuozzo, and some of the things are positive.  Some of the things are negative.  Ok?  The people at Bensley Athletic Association think very highly of you and I think Bensley is . . . was a place that needed some input and needed some organization and I think you did that.  But there are some other problems we need to deal with.  Ok?  Um, lookin' at your background, you were very candid with Mister Sch . . . with Bob here when he interviewed you and you said you needed help and supposedly . . . and I understand the thing with money, I don't know if was [sic] money causin' problems for sure and it's court ordered and maybe, you know, the state ought to be payin' for it to make you a productive member of society.

SCHWARTZ:  (inaudible).

HARTLESS:  But that didn't happen and we're here now, and I'm tellin' you when I leave here, I'm goin' to the Commonwealth Attorney in Chesterfield.  Ok?

[APPELLANT]:  I want to talk to my attorney first.

-

> HARTLESS:  Well, let me finish.  Alright.  I
> want you to know where you stand, and you
> can do that.  That's entirely up to you.
>
> [APPELLANT]:  I just want to make a call to
> him first before (inaudible).
>
> HARTLESS:  Well, I don't have any . . . I'm
> not arrestin' you now.  Ok?  I don't have
> any indictments, don't have any arrest
> warrants.

The exchange continued, and then, the officers allowed appellant to telephone his attorney.  Immediately prior to calling his attorney, appellant said, "I just got to ask him somethin'."  Appellant called the attorney's office, but the attorney was unavailable.  Then, the following exchange occurred:

> HARTLESS:  Did they say when your attorney
> would be back?
>
> [APPELLANT]:  Nah, they thought he was in
> court.
>
> HARTLESS:  Ok we can continue to talk, or
> you know, remember you said you wanted to
> talk to your attorney.
>
> [APPELLANT]:  Well, I do 'cause I asked him
> about . . . ask Randy (sounds as if
> [appellant is] crying) again.
>
> SCHWARTZ:  Who is Randy?

The interview continued, and appellant made incriminating statements about the telephone calls to the children.  He admitted dialing the numbers for two of the calls but denied talking to the children.  Detective Hartless then raised the issue of counsel:

-

> HARTLESS:  You want to try callin' your attorney again and ask him that question?
>
> [APPELLANT]:  No.  I was gonna ask him about Randy.
>
> HARTLESS:  Ok.  You want to continue talking without your attorney.
>
> [APPELLANT]:  (Implication yes).

Detective Hartless testified at trial that appellant implied his willingness to continue without an attorney by shaking his head up and down.

On November 22, 1996, appellant contacted Detective Hartless and indicated that he wanted to speak with the detective.  By this date, appellant had been served with an indictment of the charges against him relating to the telephone calls.  The detective opened a third interview:

> HARTLESS:  Ah, November Twenty Second, Nineteen Ninety Six and it's Ten Fifteen P.M., and you wanted me to come back and speak to you, is that right?
>
> [APPELLANT]:  Yes.
>
> HARTLESS:  Okay, do I need to read you your rights again?  Do you know 'em?
>
> [APPELLANT]:  Naw.
>
> HARTLESS:  Since we've done been through two times before, okay, you get your indictment served on you yet, from Chesterfield?

At trial, appellant moved to suppress the statements obtained during the November 13, 1996 and November 22, 1996 interviews.  Appellant argued that he invoked his rights under Miranda v. Arizona, 384 U.S. 436 (1966), by stating during the

-

November 13 interview, "I want to talk to my lawyer." Appellant argued that the statements were made without access to counsel and were not voluntary. The trial judge denied the motion, finding appellant effectively waived his right to counsel during the interview.

## II. ANALYSIS

Appellant contends the trial judge erred in: 1) denying his motion to suppress, 2) finding the evidence sufficient to support his conviction under Code § 18.2-370 on the Kida charge, and 3) failing to exclude witnesses and allowing evidence of unadjudicated crimes at sentencing. We reverse the convictions and remand for further proceedings.

## A. THE MOTION TO SUPPRESS

Appellant argues that his statements of November 13, 1996, and November 22, 1996, to Detective Hartless should have been suppressed as violative of his Fifth Amendment right to counsel. Appellant argues that the November 13 interview violated the rule in Edwards v. Arizona, 451 U.S. 477 (1981). Appellant contends the information obtained during the November 22 interview was tainted by the illegally obtained information on November 13 and, therefore, was inadmissible. Further, appellant argues that his statements on November 22 were made in an attempt to clarify the incriminating statements that he made on November 13. Finally, appellant argues he should have been

-

re-advised of his Miranda rights prior to the November 22

interview.

> In order to insure that the Fifth
> Amendment right against compulsory self-
> incrimination is protected during the
> custodial interrogation of criminal
> suspects, the United States Supreme Court
> established a series of "procedural
> safeguards" that law enforcement authorities
> must adhere to when interviewing suspects in
> their custody.  See Davis v. United States,
> 512 U.S. 452, 457, 114 S. Ct. 2350, 2354,
> 129 L.Ed.2d 362 (1994) (citing Michigan v.
> Tucker, 417 U.S. 433, 443-44, 94 S. Ct.
> 2357, 2363-64, 41 L.Ed.2d 182 (1974)); see
> also Mier v. Commonwealth, 12 Va. App. 827,
> 831, 407 S.E.2d 342, 344-45 (1991).
> Compliance with these procedures is a
> "prerequisite[ ] to the admissibility of any
> statement made by a defendant" during
> custodial interrogation.  Miranda, 384 U.S.
> at 476, 86 S. Ct. at 1629; see also Goodwin
> v. Commonwealth, 3 Va. App. 249, 252, 349
> S.E.2d 161, 163 (1986).

Quinn v. Commonwealth, 25 Va. App. 702, 709-10, 492 S.E.2d 470,

474 (1997).

> In order to "prevent police from
> badgering a defendant into waiving his
> previously asserted Miranda rights" and to
> "protect the suspect's 'desire to deal with
> the police only through counsel,'" the
> United States Supreme Court established the
> "Edwards rule" as a "second layer of
> prophylaxis for the Miranda right to
> counsel."  See Davis, 512 U.S. at 458, 114
> S. Ct. at 2355; McNeil v. Wisconsin, 501
> U.S. 171, 176, 178, 111 S. Ct. 2204, 2208,
> 2209, 115 L.Ed.2d 158 (1991); Michigan v.
> Harvey, 494 U.S. 344, 350, 110 S. Ct. 1176,
> 1180, 108 L.Ed.2d 293 (1990).

Id. at 710-11, 492 S.E.2d at 474-75.

-

Under Edwards, "once the defendant invokes his Miranda right to counsel, all police-initiated interrogation regarding any criminal investigation must cease unless the defendant's counsel is present at the time of questioning." Id. at 711, 492 S.E.2d at 475 (citations omitted).

The determination of inadmissibility under Edwards involves application of a three-part test. See id. at 712, 492 S.E.2d at 475.

> First, the trial court "must determine whether the accused actually invoked his right to counsel" and whether the defendant remained in continuous custody from the time he or she invoked this right to the time of the statement. Second, if the accused has invoked his or her right to counsel and has remained in continuous custody, the statement is inadmissible unless the trial court finds that the statement was made at a meeting with the police that was initiated by the defendant or attended by his lawyer. Third, if the first two parts of the inquiry are met, the trial court may admit the statement if it determines that the defendant thereafter "knowingly and intelligently waived the right he had invoked."

Id. at 712, 492 S.E.2d at 475 (citations omitted).

In Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983), the United States Supreme Court held that the defendant, who had previously invoked his right to counsel, initiated further conversation with the police by asking, "'Well, what is going to happen to me now?'" The Court wrote:

> While we doubt that it would be desirable to build a superstructure of legal refinements

-

around the word "initiate" in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to "initiate" any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a request to use a telephone that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or police officer, relating to routine incidents of the custodial relationship, will not generally "initiate" a conversation in the sense in which that word was used in Edwards.

Id. The Court, however, held that the defendant's question "evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship." Id. at 1045-46.

When a motion to suppress is reviewed on appeal, the burden is on the appellant to show that the ruling, when the evidence is considered in the light most favorable to the Commonwealth, constituted reversible error. See Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017, 101 S. Ct. 579, 66 L.Ed.2d 477 (1980). We review the trial court's findings of historical fact only for "clear error," but we review de novo the trial court's application of defined legal standards, such as "reasonable suspicion" and "custodial interrogation," to the particular facts of a case. See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas v. United States, 517 U.S. 690, 700, 116 S. Ct. 1657, 134 L.Ed.2d 911 (1996).

-

<u>Ford v. Commonwealth</u>, 28 Va. App. 249, 255, 503 S.E.2d 803, 805 (1998).

In this case, we find that appellant clearly invoked his right to counsel at the November 13, 1996 interview when he stated, "I want to talk to my attorney first."  We also find that appellant was in continuous custody from the time he invoked his right to counsel to the time that he made the incriminating statements about the telephone calls.

The Commonwealth argues that appellant was not in custody on November 13 for the purposes of <u>Miranda</u> because he was incarcerated in another jurisdiction on another charge and had not been arrested for the offenses relating to the telephone calls.  The Commonwealth's argument clearly is contrary to the holding of the United States Supreme Court in <u>Mathis v. United States</u>, 391 U.S. 1 (1968).  In <u>Mathis</u>, the Court found the defendant, who was incarcerated in prison on a state sentence but had not been charged for the offenses under investigation, was in custody under the reasoning in <u>Miranda</u>.  See <u>Mathis</u>, 391 U.S. at 2-5.  The Court stated, "We find nothing in the <u>Miranda</u> opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody."  <u>Id.</u> at 4-5.  In accord with <u>Mathis</u>, we reject the Commonwealth's argument and hold that appellant was in custody for the purposes of <u>Miranda</u>. Therefore, under <u>Edwards</u>, we find that all interrogation of

-

appellant by the police should have ceased when he asked to speak with his attorney.

The officers then permitted appellant to telephone his attorney. Just before calling his attorney, appellant indicated his continuing desire to speak with his attorney by stating, "I just got to ask him somethin'." The attorney was unavailable when appellant telephoned. Detective Hartless said, "Did they say when your attorney would be back?" Appellant answered, "Nah, they thought he was in court." Detective Hartless stated, "Ok we can continue to talk, or, you know, remember you said you wanted to talk to your attorney." Appellant said, "Well, I do 'cause I asked him about . . . ask Randy again." Appellant clearly answered the detective in the affirmative regarding his desire to speak to his attorney. Appellant's statement, "Well, I do . . . ," also was in the present tense, indicating a continuing desire to speak with the attorney. Then, immediately following appellant's statement that he wanted to speak to his attorney about Randy, Investigator Schwartz asked, "Who is Randy?" Appellant then described his involvement with Randy and admitted that he made two of the telephone calls to the children. We do not find that any of appellant's repeated requests to speak to his attorney could be construed as initiating a "generalized discussion about the investigation." By inquiring about Randy and asking appellant about his involvement with Randy and the telephone calls, the officers

-

clearly resumed interrogation after appellant's invocation of his right to counsel.

The trial judge found that appellant waived his right to counsel after the initial invocation. We find that the trial court erred in determining that there was a waiver. Under Edwards, waiver only lies when the defendant is in continuous custody from the time of the invocation and the defendant either initiates the conversation with the police or has his attorney present during the conversation. In this case, appellant did not initiate the November 13 interview with the police, nor did he have counsel present at the meeting. Therefore, appellant could not have waived his right to counsel at the November 13 meeting under the Edwards test. Therefore, the trial court's denial of appellant's motion to suppress the November 13 statement was error.

Appellant contends the November 22 statement should have been suppressed because: 1) it was tainted by the illegal information obtained on November 13, 2) it was an attempt to clarify his statements made on November 13, and 3) appellant was not re-advised of his Miranda rights. We agree with appellant that he should have been re-advised of his rights before the November 22 interview.

Edwards held that a statement made by a defendant, who had been in continuous custody prior to making the statement and who had initiated the conversation with the police, may be

-

admissible if the trial court determines that the defendant knowingly and intelligently waived his <u>Miranda</u> rights. <u>See</u> <u>Quinn</u>, 25 Va. App. at 712, 492 S.E.2d at 475. In this case, it is undisputed that appellant requested the November 22 interview with Detective Hartless. The trial judge stated that appellant waived his rights because he initiated the conversation and acknowledged that he had been advised of his rights and the <u>Miranda</u> warnings. However, the record does not support the trial court's conclusion. At the outset of the November 22 interview, Detective Hartless asked appellant two questions, "Okay, do I need to read you your rights again? Do you know 'em?" Appellant answered with one word, "Naw." It simply is unclear from the record whether appellant's answer pertained to the first or the second of the detective's questions. We cannot conclude that appellant's one word answer indicates his knowing and voluntary waiver of his rights under <u>Miranda</u>. We hold that the trial court's determination of waiver was error and the statement, therefore, should have been suppressed.

### B. SUFFICIENCY OF THE EVIDENCE

On brief, the Commonwealth concedes that the evidence was insufficient to convict appellant under Code § 18.2-370 on the Kida charge. We, therefore, reverse appellant's conviction of taking indecent liberties with a minor on the Kida charge and enter final judgment.

-

## C. SENTENCING HEARING

Appellant contends the trial court erred in failing to separate witnesses and in permitting evidence of unadjudicated criminal conduct at the sentencing hearing. We agree with appellant that the trial court improperly failed to separate the witnesses, but find no error in the introduction of evidence of unadjudicated criminal conduct.

Code § 19.2-265.1 states:

> In the trial of every criminal case, the court, whether a court of record or a court not of record, may upon its own motion and shall upon the motion of either the attorney for the Commonwealth or any defendant, require the exclusion of every witness to be called, including, but not limited to, police officers or other investigators; however, each defendant who is an individual and one officer or agent of each defendant which is a corporation or association shall be exempt from the rule of this section as a matter of right.

In Johnson v. Commonwealth, 217 Va. 682, 683, 232 S.E.2d 741, 742 (1977), the Supreme Court of Virginia held that a defendant's right to exclusion of witnesses at trial was absolute.

Therefore, as the sentencing phase is a part of the trial, the trial judge in this case was required by the mandatory language in Code § 19.2-265.1 to exclude the witnesses from the courtroom on appellant's motion. We do not reach a harmless error analysis as this case is remanded for further proceedings.

-

Code § 19.2-264.3:2 states:

> Upon motion of the defendant, in any case in which the offense for which the defendant is to be tried may be punishable by death, if the attorney for the Commonwealth intends to introduce during a sentencing proceeding held pursuant to § 19.2-264.4 evidence of defendant's unadjudicated criminal conduct, the attorney for the Commonwealth shall give notice in writing to the attorney for the defendant of such intention.  The notice shall include a description of the alleged unadjudicated criminal conduct and, to the extent such information is available, the time and place such conduct will be alleged to have occurred.
>
> The court shall specify the time by which such notice shall be given.

Code § 19.2-299(A)(ii) states, in pertinent part, that when a person is found guilty upon a felony charge

> the court may . . . direct a probation officer of such court to thoroughly investigate and report upon the history of the accused, including a report of the accused's criminal record as an adult and available juvenile court records, and all other relevant facts, to fully advise the court so the court may determine the appropriate sentence to be imposed.

We have interpreted Code § 19.2-299 to include the introduction of evidence of unadjudicated criminal conduct in non-capital murder felony cases.  See Thomas v. Commonwealth, 18 Va. App. 656, 658-59, 446 S.E.2d 469, 471 (1994) (en banc).  While in Thomas, the evidence of unadjudicated criminal conduct was introduced through the presentence report, we find no distinction between a probation officer's report of the

-

defendant's past history and the admissibility of live testimony on the issue.

Therefore, appellant's argument that evidence of unadjudicated criminal conduct is limited to capital murder cases is without merit.

## III.  CONCLUSION

For these reasons, we hold that appellant's November 13, 1996 and November 22, 1996 statements to Detective Hartless were inadmissible pursuant to Edwards.  We also hold that the evidence was insufficient to support appellant's conviction under Code § 18.2-370 on the Kida charge.  Therefore, we reverse appellant's convictions and remand for further proceedings if the Commonwealth be so advised.

Reversed and dismissed,
in part, and reversed
and remanded, in part.

-