Tuesday          5th

December, 2000.


Anthony Dion Debroux,                                              Appellant,

 against        Record No. 2737-98-1
                Circuit Court No. 98-539

Commonwealth of Virginia,                                          Appellee.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Coleman, Willis,
  Elder, Annunziata, Bumgardner, Frank, Humphreys and Clements

        Jay E. Dugger (McDermott & Roe, on brief),
           for appellant.

        Leah A. Darron, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


        By published opinion dated May 2, 2000, a divided
panel of this Court affirmed the judgments of the trial court.
We stayed the mandate of that decision and granted rehearing en
banc.

        Upon rehearing en banc, it is ordered that the stay of
the May 2, 2000 mandate is lifted, and the judgments of the
trial court are affirmed for the reasons set forth in the
majority panel opinion.

        Judge Elder, joined by Judge Benton, dissents for the
reasons set forth in the panel dissent.

It is ordered that the trial court allow counsel for the appellant an additional fee of $200 for services rendered the appellant on the rehearing portion of this appeal, in addition to counsel's costs and necessary direct out-of-pocket expenses. This amount shall be added to the costs due the Commonwealth in the May 2, 2000 mandate.

This order shall be published and certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

                                        Tuesday        27th

        June, 2000.


Anthony Dion Debroux,                                    Appellant,

  against       Record No. 2737-98-1
               Circuit Court No. 98-539

Commonwealth of Virginia,                                Appellee.


                Upon a Petition for Rehearing En Banc

   Before Chief Judge Fitzpatrick, Judges Benton, Coleman, Willis,
        Elder, Bray, Annunziata, Bumgardner, Frank and Humphreys


        On May 12, 2000 came the appellant, by court-appointed

counsel, and filed a petition praying that the Court set aside

the judgment rendered herein on May 2, 2000, and grant a

rehearing en banc thereof.

        On consideration whereof, the petition for rehearing

en banc is granted, the mandate entered herein on May 2, 2000 is

stayed pending the decision of the Court en banc, and the appeal

is reinstated on the docket of this Court.

        The parties shall file briefs in compliance with Rule

5A:35. The appellant shall attach as an addendum to the opening

brief upon rehearing en banc a copy of the opinion previously

rendered by the Court in this matter. It is further ordered that

                                -3-

the appellant shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Lemons[*]
Argued at Chesapeake, Virginia


ANTHONY DION DEBROUX
                                                    OPINION BY
v.    Record No. 2737-98-1          JUDGE DONALD W. LEMONS
                                              MAY 2, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                    Christopher W. Hutton, Judge

            Jay E. Dugger (McDermott & Roe, on brief),
            for appellant.

            Leah A. Darron, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Anthony Dion Debroux appeals his convictions for possession

of marijuana and possession of cocaine.  On appeal, he contends

the trial court erroneously concluded that the search of his

person resulting in the discovery of the drugs did not violate

the Fourth Amendment.  Finding no reversible error, we affirm.

                      I.   BACKGROUND

     On the evening of September 28, 1997, Sergeants Timothy

Walker and Robert McMurtrie were employed by American

International Security and were working as security guards at a

McDonald's Restaurant.  That evening, a woman banged on the door

_____

[*] Justice Lemons prepared and the Court adopted the opinion in
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

and asked to use the restroom. At the time, the interior of the restaurant was closed and the doors were locked, but the "drive-thru" remained open. The woman was refused entry and left but returned a few minutes later with the same request. After this process repeated itself three or four times, Walker and McMurtrie and a third security guard went outside and asked the woman for identification. The woman said it was in her car. As the guards escorted her to her vehicle, Debroux and another man exited the vehicle and approached the officers. The woman got into her car and remained there.

Debroux and his companion were "loud and disorderly," "yelling and screaming" profanities, and asked why the guards stopped the woman. Debroux had red and glassy eyes, slurred speech and an odor of alcohol about his person. He was "a little unsteady on his feet" and "didn't know where he was, [or] what was going on." The guards determined that he was slightly intoxicated but concluded they lacked the evidence necessary to secure a warrant. After Debroux became even more disorderly, McMurtrie patted him down for safety. McMurtrie felt a bulge in Debroux's right pants pocket and removed the item, which included two small bags containing .82 grams of cocaine, two bags containing 3.29 grams of marijuana and a folded paper towel containing what appeared to be seeds.

At trial, Debroux moved to suppress the drugs. Debroux contended that the security guards admitted they were registered

-6-

with the state and were, therefore, governmental actors.  He
also argued that the officers admitted they lacked probable
cause and, even if McMurtrie was justified in patting down
Debroux for weapons, he could not identify the bulge as a weapon
and should not have removed it from Debroux's pocket.

The Commonwealth's attorney did not argue the state action
issue but, rather, claimed that probable cause existed for an
arrest for disorderly conduct or obstruction of justice and
public intoxication and that the guards were entitled to conduct
a full search incident to arrest.

A review of the record indicates that Walker was registered
with the Commonwealth pursuant to Code § 9-183.3.  There is no
evidence that McMurtrie, who conducted the search, was so
registered.

The trial court denied the motion to suppress and stated:

> Based upon [Debroux's] actions in terms of
> being disorderly, I think the officers had
> the appropriate right and responsibility to
> conduct a pat down.  While there was some
> question as to the definition of the item
> found, I do not think that the officers'
> action in searching was unreasonable.  I
> think it was justified by the case law.

Debroux entered a plea of guilty but reserved his right to
appeal the denial of the suppression motion.

## II.  STATE ACTION

The Fourth Amendment is violated where an unreasonable search is conducted by state actors.  See Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).  "Evidence obtained in violation of the Fourth Amendment is inadmissible in a criminal prosecution for a charged criminal violation pertaining to the seized evidence."  Anderson v. Commonwealth, 20 Va. App. 361, 363, 457 S.E.2d 396, 397 (1995), aff'd 251 Va. 437, 470 S.E.2d 862 (1996).  In Duarte v. Commonwealth, 12 Va. App. 1023, 1025, 407 S.E.2d 41, 42 (1991), we stated,

> "[T]he rule which excludes the evidence
> obtained by unlawful search because in
> violation of the Fourth Amendment does not
> apply where the unlawful search was made by
> a private individual acting on his own
> initiative."  Harmon v. Commonwealth, 209
> Va. 574, 577, 166 S.E.2d 232, 234 (1969).
> Thus, fourth amendment protections against
> unreasonable searches and seizures are
> "wholly inapplicable 'to a search or
> seizure, even an unreasonable one, effected
> by a private individual not acting as an
> agent of the government or with the
> participation or knowledge of any
> governmental official.'"  United States v.
> Jacobsen, 466 U.S. 109, 113[-14, 104 S. Ct.
> 1652, 1656, 80 L. Ed. 2d 85] (1984) (quoting
> Walter v. United States, 447 U.S. 649, 662[,
> 100 S. Ct. 2395, 2404, 65 L. Ed. 2d 410]
> (1980); See Skinner v. Railway Labor Exec.
> Ass'n, 489 U.S. 602[, 109 S. Ct. 1402, 103
> L. Ed. 2d 639] (1989).

Whether government action is implicated "necessarily turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved 'in light of all the circumstances.'"  Id. at 1026, 407 S.E.2d at 42

-8-

(quoting Skinner, 489 U.S. at 613-14, 109 S. Ct. at 1411).

"[T]o exclude evidence based on a fourth amendment violation, a defendant must demonstrate the contested search or seizure was conducted by an officer of the government or someone acting at the government's direction rather than a private individual acting on his own initiative." Duarte, 12 Va. App. at 1025, 407 S.E.2d at 42; See 5 W. LaFave, Search and Seizure § 11.2(b), at 37 (3d ed. 1996). The general rule is that private security guards registered with the state pursuant to Code § 9-183.3 are not, on that basis alone, state actors. See, e.g., Coston v. Commonwealth, 29 Va. App. 350, 353, 512 S.E.2d 158, 160 (1999).

On appeal from a trial court's denial of a motion to suppress, we must review the evidence in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences fairly deducible from it. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). The findings of the trial court will not be disturbed unless plainly wrong or without evidence to support them. See Mier v. Commonwealth, 12 Va. App. 827, 828, 407 S.E.2d 342, 343 (1991). When reviewing the trial court's denial of a defendant's motion to suppress evidence, "[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error." McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quotation marks and citations omitted).

At Debroux's suppression hearing, the initial burden was on Debroux to establish that a search was conducted by state actors. See, e.g., Mills v. Commonwealth, 14 Va. App. 459, 464, 418 S.E.2d 718, 720 (1992) ("'[I]t is the movant's burden to establish by a preponderance of the evidence that the private party acted as a government instrument or agent' . . . ."); Duarte, 12 Va. App. at 1025, 407 S.E.2d at 42. After the burden of going forward with the evidence has been met by a preponderance of the evidence, the burden shifts to the Commonwealth to establish that the search and seizure were constitutionally permissible. See, e.g., Mills, 14 Va. App. at 464, 418 S.E.2d at 720.

The Commonwealth could prevail on the motion to suppress by defeating a claim of state action or by proving an exception to the warrant requirement for a search. Here, the Commonwealth argued that the search was permissible as an exception to the warrant requirement. The trial court did not address the issue of state action.

In Driscoll v. Commonwealth, 14 Va. App. 449, 417 S.E.2d 312 (1992), we recognized that "[a]n appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason." Id. at 452, 417 S.E.2d at 313. We also noted that the "right result, wrong reason" rule does not apply where "the correct reason for affirming the trial court was not raised in any manner at trial" and "where, because

-10-

the trial court has rejected the right reason or confined its decision to a specific ground, further factual resolution is needed before the right reason may be assigned to support the trial court's decision." Id. at 452, 417 S.E.2d at 313-14. On appeal, we may affirm on grounds different from those on which the trial court based its decision so long as the issue was addressed at trial, evidence exists in the record to support those alternate grounds, the trial judge's decision does not reject those grounds, and no further factual resolution is necessary to support the decision. See Driscoll, 14 Va. App. at 452, 417 S.E.2d at 314; see, e.g., Thims v. Commonwealth, 218 Va. 85, 235 S.E.2d 443 (1977) (despite the trial court's failure to specifically find exigent circumstances, the Supreme Court of Virginia held in the alternative that those circumstances existed and that the challenged search was lawful).

In this case, as in Driscoll, there is no conflicting evidence with respect to the state action issue. In fact, the evidence in this record clearly supports a finding that there was no state action. The record indicates that Debroux was detained by privately employed security guards, one of whom was registered with the Commonwealth pursuant to Code § 9-183.3. The evidence does not show that the security guard who searched Debroux was registered. Debroux offered no evidence that the guards acted under government direction or that the government participated in their activities. Walker and McMurtrie were

-11-

privately employed to patrol the McDonald's Restaurant, and their duty was to serve the restaurant and protect its interests. They were not police officers. No evidence proved that any law enforcement agencies knew about or exercised any power or control over their actions on the night in question. "While it was [McDonald's] policy to invoke the protection of the law and the police to vindicate its rights through public process, the duty of its agents did not necessarily require police involvement or criminal prosecution. The cooperation which those agents gave to the police was merely coincident to the performance of their private duties." Mier, 12 Va. App. at 833, 407 S.E.2d at 346 (citations omitted).

From the initial contact with Debroux until the subsequent arrest and disputed search and seizure, the evidence showed that the security guards were acting pursuant only to their private employment, conduct which presents no Fourth Amendment issues. See, e.g., United States v. Francoeur, 547 F.2d 891, 893 (5th Cir.), cert. denied, 431 U.S. 932 (1977); Coston, 29 Va. App. at 353, 512 S.E.2d at 160; Mier, 12 Va. App. at 833, 407 S.E.2d at 346; Duarte, 12 Va. App. at 1025, 407 S.E.2d at 42.

This case is distinguished from Johnson v. Commonwealth, 26 Va. App. 674, 496 S.E.2d 143 (1998), in one important respect. In Johnson we observed,

> [b]ased on the parties' representations and its own review of the relevant legal principles, the trial court held that the [Virginia Marine Resources Commission] had

-12-

> no administrative authority to conduct a warrantless inspection or search of the premises for untagged striped bass.

Id. at 681, 496 S.E.2d at 146. Because the Commonwealth conceded the issue at trial and the trial judge decided the issue accordingly, the Commonwealth was barred from raising the issue on appeal. We said,

> [i]n this case, the Commonwealth's attorney conceded in the trial court that "there is no regulatory scheme under Burger" that would permit application of the administrative search exception to the warrant requirement. The trial court agreed. Therefore, the Commonwealth is barred from asserting the exception as a basis for affirmance on appeal. See, e.g., Manns v. Commonwealth, 13 Va. App. 677, 679-80, 414 S.E.2d 613, 615 (1992) (holding that a party, "having agreed upon the action taken by the trial court, should not be allowed to assume an inconsistent position") (quoting Clark v. Commonwealth, 220 Va. 201, 214, 257 S.E.2d 784, 792 (1979)).

Johnson, 26 Va. App. at 683, 496 S.E.2d at 147.

Here, the Commonwealth did not concede the issue of state action, nor did the trial judge decide the issue. The Commonwealth's position and the trial court's decision were not unlike the reasoning in many cases where the decision-maker bypasses an issue because the case can be resolved without addressing it. Often, appellate courts will preface such reasoning by stating, "assuming without deciding." The record does not reveal a concession by the Commonwealth, nor does it reveal that the issue of state action was decided by the trial court.

-13-

This case also is distinguished from Moore v. Commonwealth, 14 Va. App. 198, 415 S.E.2d 247 (1992), cited by the dissent. In Moore, an appeal of a conviction for driving after having been declared an habitual offender, the Commonwealth on appeal asserted that Moore's double jeopardy argument was procedurally defaulted because he did not offer proof at trial of his prior convictions for reckless driving, failing to stop and attempting to elude a police officer. We observed, "the Commonwealth conceded that appellant had 'been tried' on the prior 'crimes.'" Id. at 200, 415 S.E.2d at 248.

The existence of prior "crimes" is a necessary element of double jeopardy analysis, and the record in Moore clearly supported our conclusion that the Commonwealth conceded the matter at trial. By contrast, the issue whether the officers were state actors did not have to be decided because the trial judge decided the case on alternative grounds.

Concluding that Debroux did not establish by preponderance of the evidence that state action was involved, it is unnecessary to address the merits of the Fourth Amendment claim.

Accordingly, we hold that the trial court did not err in denying the motion to suppress.  The convictions are affirmed.

<u>Affirmed.</u>

Elder, J., dissenting.

I believe the majority errs in concluding that the issue of whether Walker and McMurtrie were state actors may serve as a basis for affirmance on appeal. Therefore, I respectfully dissent. Because I disagree on this issue, I would consider the reasonableness of the search and would conclude that a remand for additional findings of fact on this issue is required.

A.

GOVERNMENT ACTION

I agree with the majority's assertion that "in order to exclude evidence based on a Fourth Amendment violation, a defendant must demonstrate the contested search or seizure was conducted by an officer of the government or someone acting at the government's direction." Duarte v. Commonwealth, 12 Va. App. 1023, 1025, 407 S.E.2d 41, 42 (1991). "'[I]t is the movant's burden to establish by a preponderance of the evidence that the private party acted as a government instrument or agent' . . . ." Mills v. Commonwealth, 14 Va. App. 459, 464, 418 S.E.2d 718, 720 (1992) (quoting United States v. Feffer, 831 F.2d 734, 739 (7th Cir. 1987)). Whether government action is implicated turns on the degree of the government's "'participation in the private party's activities,'" Duarte, 12 Va. App. at 1026, 407 S.E.2d at 42 (quoting Skinner v. Railway Labor Exec. Ass'n, 489 U.S. 602, 614-15, 109 S. Ct. 1402, 1411, 103 L. Ed. 2d 639 (1989)), and is a question of fact to be

-16-

decided under the circumstances of each case, see Mills, 14 Va. App. at 463-64, 418 S.E.2d at 720.[1]

The majority concludes that "the Commonwealth did not concede the issue of state action" and "the trial judge [did not] decide the issue."  I do not believe the majority's conclusions are supported by the record.  Whether Walker and McMurtrie were state actors was a threshold issue which had to be resolved before the trial court could address the existence of probable cause or reasonable suspicion.  Appellant expressly argued to the trial court that Walker and McMurtrie were state

---

[1] In deciding in Mills that whether a private person is a government agent for purposes of the Fourth Amendment is a question of fact, we relied on two cases decided by the Court of Appeals for the Seventh Circuit.  See Mills, 14 Va. App. at 463-64, 418 S.E.2d at 720 (citing United States v. Koenig, 856 F.2d 843, 849 (7th Cir. 1988); Feffer, 831 F.2d at 739).  After our decision in Mills, the Seventh Circuit noted that "the ultimate question whether a private person is actually a government agent" is "a question that requires the application of a legal concept (agency) to facts" and "may, after Ornelas v. United States, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996), be subject to plenary review by the court of appeals." United States v. Martin, 195 F.3d 961, 963 (7th Cir. 1999).  The Seventh Circuit also noted, however, that even under Ornelas, "the determination of the underlying facts remains subject to the clear-error rule."  Id.; see McGee v. Commonwealth, 25 Va. App. 193, 198 n.1, 487 S.E.2d 259, 261 n.1 (1997) (en banc) (noting, under Virginia law, that an appellate court is "bound by the trial court's findings of historical fact unless 'plainly wrong'" rather than clearly erroneous).
 Because the United States Supreme Court's decision in Ornelas dealt expressly only with the standard for review of probable cause and reasonable suspicion determinations, Ornelas is not binding upon us in our review of Fourth Amendment agency issues.  See Ornelas, 517 U.S. at 699, 116 S. Ct. at 1659.  Although the Seventh Circuit's decision in Martin could be viewed as holding that the agency issue is a mixed question of law and fact, our decision in Mills remains binding on us unless altered by the Virginia Supreme Court or this Court sitting en banc.

-17-

actors, and the Commonwealth's attorney did not contend

otherwise. In fact, he referred to them as "officers" and made

no mention of their status. He simply argued that they had

either probable cause to arrest or reasonable suspicion for a

weapons frisk, thus justifying discovery of the drugs. Whether

Walker and McMurtrie had probable cause or reasonable suspicion

would have been irrelevant if they were not state actors.

Therefore, I would hold the Commonwealth implicitly conceded

that Walker and McMurtrie were state actors.[2] Further, by

holding that "the officers had the appropriate right and

responsibility to conduct a pat down," the trial court also

implicitly found that the guards were state actors.

We reached a similar conclusion in Moore v. Commonwealth,

14 Va. App. 198, 200, 415 S.E.2d 247, 249 (1992). In Moore, the

accused was convicted for driving after having been declared an

habitual offender, over his claim that the conviction violated

the double jeopardy prohibition based on his prior conviction

for two misdemeanors arising out of the same act of driving.

See id. at 199, 415 S.E.2d at 248. He appealed, and the

Commonwealth argued that his claim was procedurally barred

---

[2] This approach does not involve the application of Rule 5A:18, which provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18 expressly applies to an appellee only where the appellee asserts an error that seeks to reverse a judgment. Here, the Commonwealth raised the state actor issue as an alternative ground for affirmance of the

-18-

because he never introduced evidence to prove his prior misdemeanor convictions. See id. at 199-200, 415 S.E.2d at 248. We held that although the Commonwealth did not make "an express concession of [the accused's] misdemeanor convictions[,] . . . the clear import of the Commonwealth's position" in arguing that the convictions were not lesser-included offenses was that the convictions did, in fact, exist. Id. at 200, 415 S.E.2d at 249. We held that the Commonwealth, "'[h]aving conceded the matter before the trial judge, . . . [was] bound by its concession and [was] not entitled to raise this issue for the first time on appeal.'" Id. (quoting Low v. Commonwealth, 11 Va. App. 48, 51, 396 S.E.2d 383, 384 (1990)); see also Clark v. Commonwealth, 220 Va. 201, 214, 257 S.E.2d 784, 792 (1979) ("[A party], having agreed upon the action taken by the trial court, should not be allowed to assume an inconsistent position.").

Here, as in Moore, the accused had the burden of proving certain predicate facts, and the Commonwealth implicitly conceded the existence of those facts.[3] Further, in reaching the

conviction.

[3] Under Mills, whether the guards were state actors was a factual determination. However, I would reach the same result if the determination constituted a pure question of law or a mixed question of law and fact. Where a trial court rules on a legal issue and that ruling is unchallenged, it becomes "the law of the case and is binding on the parties and this court." Miles v. Commonwealth, 205 Va. 462, 468, 138 S.E.2d 22, 27 (1964); see Correll v. Commonwealth, 232 Va. 454, 460 n.1, 352 S.E.2d 352, 355 n.1 (1987) (upholding as "the law of the case" trial court's exclusion of defendant's statements where court ruled at pretrial suppression hearing that statements were admissible but said at trial, without objection, that it had ruled the

issue of the reasonableness of the search, the trial court implicitly ruled on the state actor issue. The majority effectively ignores our decision in Moore, which remains binding on a panel of this Court until overturned by the Virginia Supreme Court or this Court sitting en banc. As Moore makes clear, it matters not that the Commonwealth's concession and the trial court's determination were implicit rather than explicit, as in Johnson v. Commonwealth, 26 Va. App. 674, 496 S.E.2d 143 (1998).

The majority's application of the "right result for the wrong reason" rule is misplaced. See Driscoll v. Commonwealth, 14 Va. App. 449, 417 S.E.2d 312 (1992). That principle permits affirmance of a conviction on grounds different from those relied on by the trial court if the alternate ground for affirmance was raised in the trial court, evidence exists in the record to support the alternate ground, the trial judge's decision does not reject those grounds, and no further factual resolution is necessary to support the decision. See id. at 452, 417 S.E.2d at 314. Here, as detailed more fully above, the trial judge's ruling on the merits of the Fourth Amendment issue constituted a rejection of the argument that Walker and McMurtrie were not state actors.

Further, even if I were to agree with the majority that the trial court did not rule implicitly on the state actor issue, I

statements were inadmissible).

nevertheless would conclude that further factual resolution would have been necessary, thereby preventing us from affirming on these grounds. Under Mills, 14 Va. App. at 463-64, 418 S.E.2d at 720, whether Walker and McMurtrie were state actors is a question of fact. Contrary to the majority's assertion, our ruling in Coston v. Commonwealth, 29 Va. App. 350, 512 S.E.2d 158 (1999), does not compel a different result under the facts of this case. Although we noted in Coston that a private security guard ordinarily is not a "public actor or public employee for most purposes," we reached a contrary result in that case. Id. at 352-53, 512 S.E.2d at 159-60. We held that a private security guard who issued a summons for trespassing was a state actor for purposes of punishing the forgery of the trespasser in executing the summons. See id. We did not purport in Coston to hold that all other acts by private security guards do not constitute state action. Rather, such a determination requires factual findings which should be made by the trial court in the first instance.

For these reasons, I respectfully dissent from the decision of the majority and would reach the trial court's ruling on the reasonableness of the search.

B.

REASONABLENESS OF SEARCH

Police-citizen encounters which implicate the Fourth Amendment fall into one of two categories.  First, police may engage in "brief investigatory stops, commonly referred to as 'Terry' stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989)).  Second, they may effect "'highly intrusive, full-scale arrests' or searches[,] which must be based upon probable cause to believe that a crime has been committed by the suspect."  Id. (quoting Sokolow, 490 U.S. at 7, 109 S. Ct. at 1585).

In the course of a Terry stop, the officer may conduct a limited frisk of the suspect's outer clothing for weapons if the officer "reasonably believes, based on specific and articulable facts, that the suspect might be armed and dangerous.  If, during the pat-down search, the police officer feels an object that he reasonably believes could be a dangerous weapon, the officer may seize the object from the suspect's person."  Phillips v. Commonwealth, 17 Va. App. 27, 30, 434 S.E.2d 918, 920 (1993) (citations omitted).

> If a police officer lawfully pats down a
> suspect's outer clothing and feels an object
> [other than a weapon] whose contour or mass
> makes its identity immediately apparent,

-22-

> there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

Minnesota v. Dickerson, 508 U.S. 366, 375-76, 113 S. Ct. 2130, 2137, 124 L. Ed. 2d 334 (1993) (emphasis added). However, where the character of the item detected is not immediately apparent and the officer makes "no claim that he suspected [the] object to be a weapon," he may not investigate further. Id. at 377-78, 113 S. Ct. at 2138-39. Further "exploration . . . [is] unrelated to '[t]he sole justification of the search [under Terry:] . . . the protection of the police officer and others nearby.'" Id. at 378, 113 S. Ct. at 2138-39 (quoting Terry v. Ohio, 392 U.S. 1, 29, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968)).

Here, the evidence, viewed in the light most favorable to the Commonwealth, the party prevailing below, supports the trial court's finding that the officers had an objectively reasonable suspicion of criminal activity sufficient to detain appellant briefly for further investigation. The evidence establishes that appellant and his companion were "loud and disorderly," "yelling and screaming" profanities, and that appellant exhibited signs of intoxication--he "didn't know where he was, what was going on," his eyes were red and glassy, his speech was slurred, he had alcohol on his breath, and he was unsteady on

-23-

his feet.  Assuming without deciding that these circumstances gave the officers reason to believe appellant might be armed and dangerous, nevertheless, Sergeant McMurtrie's frisk of appellant exceeded the limits set out in Dickerson.  McMurtrie testified that he felt "a little bulge," which "wasn't solid or anything," and that he "wasn't too sure what it was."  McMurtrie did not testify that he believed the item to be a weapon, nor did he testify that the character of the item was immediately apparent to him after patting it.  As a result, he was not permitted to investigate further.  Therefore, the trial court erred in concluding that McMurtrie's discovery of the contraband was within the scope of a reasonable search for weapons.

The Commonwealth urges us, in the alternative, to apply the principle that permits affirmance of the trial court's ruling if it reached the "right [result] for the wrong reason." Driscoll, 14 Va. App. at 452, 417 S.E.2d at 313.  It contends the officers had probable cause to arrest appellant for disorderly conduct pursuant to Code § 18.2-415 and were entitled to search him incident to that arrest.

Settled legal principles provide that an officer who makes a custodial arrest based on probable cause properly may search the arrestee pursuant to that custodial arrest.  See United States v. Robinson, 414 U.S. 218, 235, 94 S. Ct. 467, 477, 38 L. Ed. 2d 427 (1973).  "Probable cause to arrest must exist exclusive of the incident search.  [However,] [s]o long as

-24-

probable cause to arrest exists at the time of the search, . . . it is unimportant that the search preceded the formal arrest if the arrest 'followed quickly on the heels of the challenged search.'" Carter v. Commonwealth, 9 Va. App. 310, 312, 387 S.E.2d 505, 506-07 (1990) (quoting Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S. Ct. 2556, 2564, 65 L. Ed. 2d 633 (1980)) (other citation omitted).

"[T]he test of constitutional validity [of a warrantless arrest and incidental search] is whether . . . the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed." Bryson v. Commonwealth, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970). To establish probable cause, the Commonwealth must show "'a probability or substantial chance of criminal activity, not an actual showing'" that a crime was committed. Ford v. City of Newport News, 23 Va. App. 137, 143-44, 474 S.E.2d 848, 851 (1996) (quoting Illinois v. Gates, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 2335 n.13, 76 L. Ed. 2d 527 (1983)). Ordinarily, the Fourth Amendment requires only that an objectively reasonable basis exist for a search. See, e.g., Whren v. United States, 517 U.S. 806, 812-13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996). "'[T]hat the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as [all] the

-25-

circumstances, viewed objectively, justify that action.'"  Id. at 813, 116 S. Ct. at 1774 (quoting Scott v. United States, 436 U.S. 128, 138, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168 (1978)).

Here, viewing the evidence in the light most favorable to the Commonwealth, the officers had probable cause to arrest appellant for public intoxication pursuant to Code § 18.2-388 or disorderly conduct pursuant to Code § 18.2-415, thereby justifying a full search of his person incident to arrest.[4]  As set out above, the evidence, viewed in the light most favorable to the Commonwealth, establishes that appellant and his companion were "loud and disorderly," "yelling and screaming" profanities, and that appellant exhibited signs of intoxication--he "didn't know where he was, what was going on," his eyes were red and glassy, his speech was slurred, he had alcohol on his breath, and he was unsteady on his feet.

Code § 19.2-74 provides that an arresting officer who has custody of a person for certain misdemeanor offenses, including disorderly conduct, ordinarily shall issue the person a summons and, upon his written promise to appear in compliance with the summons, shall release that person from custody.  However, that code section, in conjunction with Code § 19.2-82, permits an officer to effect a custodial arrest and take the arrestee

---

[4] Appellant has not raised the issue of whether or to what extent the authority of a registered security guard is subject to limitations not imposed on traditional law enforcement officers. Therefore, I analyze the guards' actions in detaining and searching appellant as if they had the full power of arrest

before a magistrate under certain circumstances, such as when the detainee fails or refuses to discontinue the unlawful act, see Code § 19.2-74(A)(1), (2); Lovelace v. Commonwealth, 258 Va. 588, 596, 522 S.E.2d 856, 860 (1999), or when the arresting officer reasonably believes the detainee is likely to harm himself or others, see Code § 19.2-74(A)(1). That code section specifically excludes from its coverage, inter alia, "the offense of public drunkenness as defined in § 18.2-388." See Code § 19.2-74(A)(2).

1.

DISORDERLY CONDUCT

The Commonwealth contends that the officers had probable cause to arrest appellant for disorderly conduct and were entitled to search him pursuant to that arrest. Under the facts in this case, viewed in the light most favorable to the Commonwealth, appellant committed the offense of disorderly conduct and, according to Sergeant McMurtrie, appellant failed to discontinue his disorderly conduct when the officers detained him pursuant to their investigation. Therefore, the evidence provided an objectively reasonable basis for a custodial arrest. Although the officers would have been entitled to conduct a full search incident to a lawful custodial arrest, the evidence does not support a finding that they made such an arrest. Further, they were not required to do so. Although Code § 19.2-74

---

given by the code to traditional law enforcement officers.

permitted an arrest based on appellant's failure or refusal to discontinue his disorderly conduct, this provision is discretionary and does not require the officer to effect a full custodial arrest. See Code § 19.2-74(A)(1) ("[I]f any such person shall fail or refuse to discontinue the unlawful act, the officer may proceed according to the provisions of § 19.2-82," which permits an officer to effect a warrantless custodial arrest. (emphasis added)). Where an officer merely issues a summons or citation, he may not conduct a search incident to issuance of the citation, even if the law permits a full custodial arrest for the cited offense, in the absence of evidence of a need to disarm the person or preserve evidence of the violation for which the citation was issued. See Lovelace, 258 Va. at 594, 522 S.E.2d at 859 (citing Knowles v. Iowa, 525 U.S. 113, 115-18, 119 S. Ct. 484, 486-88, 142 L. Ed. 2d 492 (1998)); see also Rhodes v. Commonwealth, 29 Va. App. 641, 645, 513 S.E.2d 904, 906 (1999) (en banc).

Although Fourth Amendment analysis ordinarily involves an evaluation of the objective reasonableness of a search or seizure, see, e.g., Whren, 517 U.S. at 812-13, 116 S. Ct. at 1774, the United States Supreme Court's decision in Knowles v. Iowa instructs that subjective intentions control the analysis of whether a full search was reasonable under the facts of this case, 525 U.S. at 117-18, 119 S. Ct. at 487-88; see also Lovelace, 258 Va. at 595-96, 522 S.E.2d at 859-60. Where an

-28-

officer issues a summons in lieu of effecting a custodial arrest and then conducts a full search based only on the "search incident to arrest" rationale, as the officer in <u>Knowles</u> did, the officer's subjective intent is clear from his completed actions.  See <u>Knowles</u>, 525 U.S. at 114, 119 S. Ct. at 486 (involving search of defendant's car as incident to arrest under statute permitting such a search upon issuance of a citation). Under those circumstances, without more, the Fourth Amendment does not permit a full search.  See <u>id.</u> at 117-18, 119 S. Ct. at 487-88.  Where the officer conducts a full search prior to either releasing the accused on a summons or effecting a full custodial arrest, his intent may not be clear.  Under these circumstances, the mere presence of probable cause to effect a full custodial arrest is insufficient to permit the search.  See <u>Lovelace</u>, 258 Va. at 594-96, 522 S.E.2d at 858-60 (involving search of defendant's person during detention for open-container offense).  In <u>Lovelace</u>, in responding to an argument that probable cause to arrest is, in fact, sufficient to permit a full search, the Virginia Supreme Court held as follows:

> The fact that the officers <u>could</u> have issued only a summons for the [particular] offense . . . negates the Commonwealth's argument that the existence of probable cause to charge [the accused] with [that particular offense] allowed [the officer] to search him.  After <u>Knowles</u>, an "arrest" that is effected by issuing a citation or summons rather than taking the suspect into custody does not, by itself, justify a full field-type search.

-29-

Id. at 596, 522 S.E.2d at 860 (emphasis added).[5]

Based on these principles, a full search of appellant was not reasonable unless (1) the officers effected or intended to effect a full custodial arrest for disorderly conduct prior to undertaking the search or (2) the Commonwealth offered evidence of a "need to disarm [appellant]," beyond the need satisfied by a pat-down search, or a need to "preserve any evidence for the [disorderly conduct] violation."  Rhodes, 29 Va. App. at 645, 513 S.E.2d at 906; see Lovelace, 258 Va. at 593-94, 522 S.E.2d at 858.

Here, the trial court did not expressly consider the probable cause issue and made no finding that either officer intended to make a full custodial arrest for disorderly conduct

---

[5] In Lovelace, the Court acknowledged that the officer could have effected a custodial arrest if Lovelace had failed or refused to discontinue the unlawful act, but it said there was no evidence in the record that Lovelace acted in such a manner.  See 258 Va. at 596, 522 S.E.2d at 860.  Appellant's case is distinguishable because the evidence would support a finding that appellant refused to discontinue the unlawful act.  However, this is a distinction without a difference because, as discussed in the text, infra, the trial court made no finding on this issue and, even if it had, the officers still were not compelled to effect a custodial arrest.  Code § 19.2-74(A)(1) states merely that if the "person shall fail or refuse to discontinue the unlawful act, the officer may proceed according to the provisions of Code § 19.2-82."  (Emphasis added).  Because the officers could still have decided only to issue a summons and did not testify that they intended to effect a full custodial arrest prior to conducting the full search, the rationale of Knowles and Lovelace is applicable.

or any other offense. See Driscoll, 14 Va. App. at 452, 417 S.E.2d at 314 (noting that appellate court may not affirm conviction under "right [result] for the wrong reason" rationale in "those cases where, because the trial court has . . . confined its decision to a specific ground, further factual resolution is needed"). Further, even viewed in the light most favorable to the Commonwealth, the evidence does not support such a finding. McMurtrie said he initially detained appellant for being disorderly and then placed him in custody when he became even more disorderly. However, McMurtrie never testified that he effected or intended to effect a custodial arrest. Code § 19.2-74, which allows release of certain misdemeanants on a summons, uses the terms "detention" and "custody" interchangeably and does not permit the inference that placing a misdemeanant "in custody" is synonymous with effecting a custodial arrest. See also Lovelace, 258 Va. at 596, 522 S.E.2d at 860. Therefore, the evidence does not permit a finding that McMurtrie intended to effect a custodial arrest.

Finally, the Commonwealth offered no evidence of a "need to disarm [appellant]," beyond the need satisfied by the pat-down search, and no evidence of a need to "preserve any evidence for the [disorderly conduct] violation." Rhodes, 29 Va. App. at 645, 513 S.E.2d at 906; see also Lovelace, 258 Va. at 596-97, 522 S.E.2d at 860 (noting that where officer conducting pat-down "felt nothing similar to a weapon" and "did not testify that he

felt something that was evidence related to [the charged offense of] drinking an alcoholic beverage in public," officer "did not 'reasonably believe' that the bag was either a weapon or evidence related to [defendant's] alleged alcohol offense"). Walker and McMurtrie both testified that McMurtrie conducted a pat-down "for . . . safety."

For these reasons, the evidence of appellant's disorderly conduct did not render the officers' search of appellant reasonable under the Fourth Amendment.

2.

PUBLIC DRUNKENNESS

The search of appellant may nevertheless have been reasonable if supported by probable cause to arrest for public drunkenness under Code § 18.2-388. However, as set out above, the trial court did not consider the probable cause issue and made no factual finding regarding whether the officers had probable cause to arrest for public intoxication. Therefore, we cannot on this record determine whether the trial court may have reached the right result for the wrong reason. See Driscoll, 14 Va. App. at 452, 417 S.E.2d at 314 (noting that appellate court may not affirm conviction under "right [result] for the wrong reason" rationale in "those cases where, because the trial court has . . . confined its decision to a specific ground, further factual resolution is needed"). Accordingly, I would reverse

-32-

appellant's convictions and remand to the trial court for further proceedings consistent with this opinion.