COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Clements and Agee
Argued at Richmond, Virginia


JAMES EDWARD SMITH, JR.

                                         MEMORANDUM OPINION[*] BY

v.   Record No. 3022-00-2      JUDGE JEAN HARRISON CLEMENTS
                                        FEBRUARY 19, 2002

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

David M. Gammino for appellant.

H. Elizabeth Shaffer, Assistant Attorney
General (Randolph A. Beales, Attorney
General, on brief), for appellee.


James Edward Smith, Jr., was convicted on his conditional plea of guilty of possession of cocaine, in violation of Code § 18.2-250. On appeal, he contends the trial court erred in denying his motion to suppress the cocaine as the product of a seizure that violated his Fourth Amendment rights. Finding no error, we affirm the judgment of the trial court.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as necessary to the parties' understanding of the disposition of this appeal.

---

   * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"On appeal from a trial court's denial of a motion to suppress, we must review the evidence in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences fairly deducible from it." Debroux v. Commonwealth, 32 Va. App. 364, 370, 528 S.E.2d 151, 154, aff'd en banc, 34 Va. App. 72, 537 S.E.2d 630 (2000). "'The burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (alterations in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

"'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed de novo on appeal." Id. (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). "Similarly, the question whether a person has been seized in violation of the Fourth Amendment is reviewed de novo on appeal." Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000). However, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699).

-

A police-citizen encounter "is not consensual 'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" Piggott v. Commonwealth, 34 Va. App. 45, 49, 537 S.E.2d 618, 619 (2000) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).

> [W]hen a police officer confronts a person and informs the individual that he or she has been specifically identified as a suspect in a particular crime which the officer is investigating, that fact is significant among the "totality of the circumstances" to determine whether a reasonable person would feel free to leave.

McGee, 25 Va. App. at 200, 487 S.E.2d at 262.

While admitting that his encounter with the police was initially consensual, Smith contends, relying on McGee, that the police subsequently seized him when Officer Graves told him that he thought he had drugs on him and then asked to search him. By informing him that he was suspected of a crime, Smith argues, Graves placed him in a situation in which no reasonable person would feel free to leave. That seizure, Smith further argues, violated his Fourth Amendment rights because it was not based on a reasonable, articulable suspicion. Thus, he concludes, the trial court erred in refusing to suppress the cocaine found in his pockets, the discovery of which derived from the police's unlawful seizure of him.

-

The Commonwealth contends that the premise of Smith's argument is fatally flawed because Officer Graves never told Smith that he thought he had drugs on him. Thus, the Commonwealth concludes, Smith's claim is meritless.

The trial court, in determining that the encounter between Smith and Graves was consensual, found specifically that Graves never told Smith that he thought Smith had drugs on him. Smith argues that we are not bound by this finding because it is "wholly unsupported by the evidence and plainly wrong."

The question before us, then, at least initially, is whether Officer Graves told Smith that he thought Smith had drugs on him. If answered in the negative, Smith's assignment of error will, as Smith concedes, be rendered moot. If, however, the question is answered in the affirmative, further analysis on the merits of Smith's Fourth Amendment claim will, as the Commonwealth concedes, be warranted.

On direct examination, Officer Graves described his encounter with Smith as follows:

> Mr. Smith came in my direction. I asked did he mind if I talked to him. He didn't mind. At that time, I asked if I could search him. He stated, yes.

On cross-examination, Smith's counsel and Graves engaged in the following discussion regarding Smith's encounter with Graves:

> Q. All right. And when you spoke with Mr. Smith, you just testified that — you testified that you asked if you could search him?

-

A.  Yes.

Q.  All right.  Prior to that, you told him, and you've testified to this on a prior occasion, that you thought that he may have drugs and then you asked him if you could search him, correct?

A.  Yes.

Q.  All right.  So you said, you may have drugs, and that was based on what you all saw?

A.  Yes.  If I'm understanding what you just said, I didn't inquire that he had drugs.  I just asked if I could search him.

Q.  Right.  But you had said, I think you may have drugs, may I search you; and he said, yes, you can search me, correct?

A.  I don't recall saying that.  Off the top of my memory, I don't recall saying that.

Q.  But it's possible you could have said that?

A.  It's possible.

Q.  Well, you certainly – he didn't just walk up to you and the first thing you did say to him was, may I search you, right?

A.  I believe I asked him, do you mind if I search you.

Q.  Did you tell him why you wanted to search him?  Did you say it was because you had seen him place something down or that Officer Tovar wanted you to search him or anything like that?  Do you recall?

A.  No.

Q.  You don't recall?

A.  I don't recall.

-

Q. Okay. You don't recall. So the only thing that you recall saying to him was, may I search you?

A. Yes.

Q. And the only response that you recall him making is, yes?

A. Yes, sir.

Q. Okay. And that's your only recollection of the conversation?

A. Yes, sir.

Testifying on his own behalf, Smith, who had three prior felony convictions, stated that, when he approached Graves, Graves told him he suspected Smith was in possession of drugs. However, Officer Cole, who was standing near Graves and Smith during their encounter, and who was called to testify by Smith, stated on direct examination that, while Officer Tovar discussed "the possibility that [Smith] may have possessed drugs or put drugs down" with the other police officers when they saw Smith leaning over near a tree, he never heard Graves tell Smith that he thought Smith had drugs on him.

We find that this evidence, when viewed in the light most favorable to the Commonwealth, supports the trial court's factual finding that, before asking Smith for permission to search him, Graves did not say anything to Smith about Smith having drugs on his person. We further find that the court's finding is not plainly wrong.

-

Although, in responding to a question that he clearly found confusing, Graves initially testified that he told Smith that he thought he may have drugs on him, Graves quickly clarified his response by indicating that he did not ask Smith about drugs, but rather "just asked if [he] could search him." Furthermore, while allowing for the possibility that he may have told Smith that he thought Smith may have drugs in his possession, Graves repeatedly testified that he did not recall telling Smith that he thought Smith may have drugs on him. Moreover, Officer Cole, who witnessed the encounter between Graves and Smith, adamantly testified that, while the police officers discussed among themselves the possibility that Smith may have had drugs on him when they first saw him leaning over near a tree, Graves did not tell Smith that he thought Smith may have drugs on him.

As for Smith's testimony that Graves told him he suspected Smith had drugs in his possession, the trier of fact is not required to accept a party's evidence in its entirety, but is free to believe or disbelieve in part or in whole the testimony of any witness. Rollison v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). Furthermore, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235

-

(1998).  Thus, the trial court was not required to accept Smith's version of what occurred and obviously did not.

Because it is supported by credible evidence and not plainly wrong, we are bound by the trial court's finding that Officer Graves did not say anything to Smith about Smith having drugs in his possession.  Consequently, the factual premise of Smith's claim on appeal is without merit, and we need not address his claim further.  Accordingly, we hold that the trial court did not err in denying Smith's motion to suppress.

For these reasons, we affirm Smith's conviction.

<u>Affirmed.</u>