COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Felton and Kelsey
Argued at Richmond, Virginia


DALE FAITH NELSON

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1343-04-2                      JUDGE WALTER S. FELTON, JR.
                                                         FEBRUARY 22, 2005
PETERSBURG DEPARTMENT
 OF SOCIAL SERVICES


             FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
                           Robert G. O'Hara, Jr., Judge

             Neil Kuchinsky (Kuchinsky & Yeamans, P.C., on brief), for
             appellant.

             Joan M. O'Donnell for appellee.

             (Christopher B. Ackerman, Guardian *ad litem* for the minor
             children).  Guardian *ad litem* submitting on brief.


        Dale Faith Nelson (mother) appeals from the trial court's decision terminating her residual

parental rights to each of her four minor children, pursuant to Code § 16.1-283(B), 16.1-283(C)(2),

and 16.1-283(E).  Mother contends the trial court erred when it (1) ordered termination of her

residual parental rights; (2) considered "aggravating circumstances" as part of the relevant statutory

considerations under Code § 16.1-283(E); (3) failed to consider the "unrebutted evidence" of

mother's expert witness; (4) admitted testimony by the court-appointed special advocate assigned to

the case; and (5) applied improper legal standards and burdens of proof and law when making its

decision.  For the reasons that follow, we affirm the judgment of the trial court.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

Mother, a native of the Philippines, met and married Jack Michael Nelson (father) there. They subsequently moved to Virginia where four children, who are the subject of these proceedings, were born. In September 2001, a passerby picked up mother and her four children as they were walking in the rain after being shut out of their home by father. Four-year-old J.M., three-year-old B.B., twenty-month-old J.B., and three-month-old J.L. were taken to the hospital for evaluation and treatment.

The medical evidence showed that the children had been neglected and abused to the extent that there was a serious and substantial threat to their health and development. The two youngest children, J.L. and J.B., were both severely malnourished and were diagnosed with "failure to thrive due to lack of caloric intake." In both cases, the examining physician opined that the severe malnutrition had occurred over an extended period and that the lack of sufficient nourishment at such tender age would likely result in future cognitive deficits and poor physical development. J.L. and J.B. also suffered from improper closing or flattening of their skulls from lying on their backs unattended for too long. At twenty months, J.B. was unable to stand up because of severe muscle atrophy, and he failed to communicate in response to the medical staff's efforts to get him to do so. J.L., the youngest of the children, came to the hospital with circles under her eyes, a gaunt face, and a distended abdomen. She also had "bedsore" skin lesions, likely caused by being left in one position for extended periods. The oldest child, J.M., was scarred from a hot liquid burn, diagnosed as "non-accidental trauma," that occurred while he was in mother's care. The next oldest child, B.B., was found not to have any significant physical injuries.

Mother had left the children alone and unattended on numerous occasions, sometimes placing all of them in the bathroom of the house, at times tying the door shut and sometimes binding the children. The house where the family lived and where mother left the children alone

and unattended was in a deplorable condition with no electricity, no cooking facilities, exposed wiring and insulation, dirty bedding, clutter, and stacked boxes creating hazards for the small children.

Petersburg Department of Social Services (PDSS) obtained an emergency protection order removing the children from the custody and care of their parents and placing them in foster care. J.M. and B.B., the older children, were placed together in one foster home, and J.B. and J.L., the younger children, were together placed in another foster home to better meet their special needs. The foster care mother for J.M. and B.B. was of Philippine descent. The juvenile court found, pursuant to Code § 16.1-228, that each of the children had been abused and neglected. It found that the neglect and abuse suffered by the children presented a serious and substantial threat to their lives, health and development. Mother subsequently pled guilty to a charge of misdemeanor neglect and received a twelve-month suspended sentence.

Beginning in September 2001, PDSS provided numerous services to mother, including parenting classes, two psychological evaluations, and individual counseling with two separate therapists, in an effort to eliminate the conditions leading to the children's placement in foster care. In October 2002, the juvenile court entered its order granting PDSS's petitions approving the goal of terminating father's parental rights to each of the children and its foster care plans to return each of the children to mother.[1]

Despite mother's participation in these services and her obtaining stable housing and steady employment, PDSS concluded that it would not be safe to leave the four children in her care for any prolonged period of time. PDSS continued to observe that mother had difficulty controlling the children during periods of visitation. As a result, it filed foster care plans with the

---

[1] The juvenile court terminated father's parental rights in December 2002.

goal of adoption, and filed petitions for the termination of mother's parental rights to each of the children.

On appeal from the juvenile court's denial of the petitions for foster care plans with the goal of adoption, the circuit court reversed the decisions of the juvenile court, finding that it was in the best interests of the children to proceed with adoption and the termination of mother's residual parental rights for each of the children.[2]

In April 2004, the trial court heard testimony on the condition of each of the children when they were first removed from their parents' care and custody, and on the condition of each of the children after two and a half years in foster care. The evidence showed that the children improved both in health and behavior while in foster care and after they were no longer in the custody and care of their mother. The children continued to have special needs and to require special attention to address their physical and mental developmental deficiencies and their behavior problems. The court also heard testimony concerning the foster care parents' daily efforts to meet each of the children's special needs. Both the court-appointed special advocate (CASA worker) for the children, and the guardian *ad litem* for the children advised the court that the best interests of the children would be served by terminating mother's residual parental rights. Mother's therapist opined as an expert that mother could be a proper parent to the children if they were returned to her.

In its May 7, 2004 decision letter, the trial court stated that, after considering all of the evidence, it found:

> The wanton and egregious actions and inactions of Ms. Nelson, when considered in their entirety, offer clear rebuttal of all

---

[2] Mother appealed the trial court's decision approving the foster care permanency plans for adoption to the Court of Appeals, but that appeal was withdrawn, thereby affirming the judgment of the trial court in each child's case.

presumption of motherhood. Where is the nurturing, the instinct to aid, care for, protect, provide and love?

This Court can not allow these children to be returned to a parent who participated in, allowed, condoned and permitted their severe abuse, neglect and cruel treatment so obvious by the evidence in this case.

On May 10, 2004 the trial court entered its order terminating mother's residual parental rights to each of her four children, finding that PDSS proved by clear and convincing evidence that termination of mother's parental rights was in each child's best interests. It terminated mother's parental rights pursuant to Code § 16.1-283(B)(2), 16.1-283(C)(2), and 16.1-283(E). This appeal followed.

## ANALYSIS

### I.

On appeal, mother contends that, in terminating her residual parental rights, the trial court erred by failing to consider her efforts to substantially remedy the conditions that led to the removal of the children and their placement into foster care so as to allow their safe return to her care and custody.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991) (citing Toombs v. Lynchburg Div. Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407-08 (1982)). In reviewing the judgment of a trial court in terminating residual parental rights, we presume that the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Id. (citation omitted).

We review the record to determine whether there is clear and convincing evidence to support the determination of the trial court. Under familiar principles we view that evidence and all reasonable inferences in the light most favorable to the prevailing party below.

- 5 -

> Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.

Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted).

Code § 16.1-283 provides for the termination of residual parental rights under carefully defined circumstances. Here, the trial court concluded that the evidence warranted termination of mother's residual parental rights to each of the children on alternative grounds, i.e., under subsections (B), (C) and (E) of Code § 16.1-283.

Where a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court and, if we so find, need not address the other grounds. See Boone v. C. Arthur Weaver Company, 235 Va. 157, 161, 365 S.E.2d 764, 766 (1988); Debroux v. Commonwealth, 32 Va. App. 364, 371-72, 528 S.E.2d 151, 155 (2000).

Pursuant to Code § 16.1-283(B), a parent's residual parental rights "may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child" and that:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.

The record reflects that each of the children suffered from such neglect and abuse as to present a serious threat to life, health, or development. Mother does not dispute the finding that each of the children was subjected to serious abuse and neglect while in her care and custody. She pled guilty to misdemeanor neglect of her children, and was given a twelve-month suspended

sentence. The record also reflects that the children improved considerably once they entered foster care and were no longer in the care of their mother. The evidence showed that the children had special needs, including psychotherapy, medication, speech therapy, and individual personal attention from their foster families.

Mother argues, however, that the trial court erred by failing to consider the efforts she made towards remedying the conditions that led to the children being removed from her care and custody. Nothing in the record supports mother's contention that the trial court failed to consider her efforts to remedy those conditions. PDSS acknowledged mother had participated in the programs the department offered, obtained employment, maintained a stable residence, and had obtained a driver's license and a car during the period when she did not have the responsibility of caring for and meeting the special needs of the children.

The evidence before the trial court was that mother continued to be overwhelmed during her visits with the children. On multiple supervised visits with mother, the children failed to follow her directions, and she was unable to control their behavior. She showed confusion over how to provide the younger children with the necessary attention required to meet their special needs. The PDSS social worker assigned to the case opined that from her observations during the visits of mother with the children, mother would not be able to provide the safe and secure environment necessary for the return of the children to her.

Mother failed to present evidence that she could meet the special needs of her children. She testified that, prior to her children's removal from her care, she noticed that her three-month-old daughter had lost weight, yet she had not sought medical care for her. She acknowledged that she had left the children unattended. She admitted she had tied down J.M., when he was three years old, with a necktie so he would not get out of the house while she helped her husband work outside on

his car.  Mother also acknowledged that she was aware of free services to assist her with the medical and other needs of the children, yet she knowingly failed to avail herself of these services.

From the evidence, the trial court concluded that mother was incapable of providing for each of the children's special needs and that she had not demonstrated a sufficient ability to manage and control the children.  It further determined that it was not likely that the conditions which resulted in the neglect and abuse of the children could either be substantially corrected or eliminated to allow their safe return to mother within a reasonable time.  Thus, the trial court concluded that termination of mother's residual parental rights was in the children's best interest.

Based on our review of the record, we conclude that the trial court did not err in finding that there was clear and convincing credible evidence to support termination of mother's parental rights to each of the children as being in their best interests; that the neglect and abuse suffered by the children presented a substantial threat to their life, health, and development; and that mother failed to substantially remedy the conditions that resulted in the removal of the children from her care and custody and their placement into foster care.  Code § 16.1-283(B).

II.

Mother also argues that the trial court erred by considering the aggravating factors under Code § 16.1-283(E) to terminate her parental rights under that provision.

Because we conclude that the trial court's decision to terminate mother's parental rights pursuant to Code § 16.1-283(B)(2) was supported by credible evidence in the record, we need not address whether the evidence also supported other grounds for termination, including whether the trial court improperly applied amendments to Code § 16.1-283 relating to application of "aggravating circumstance."  See Boone, 235 Va. at 161, 365 S.E.2d at 766.

III.

Mother contends that the trial court erred in not considering the "unrebutted evidence of mother's expert witness/therapist," including her testimony that PDSS failed to cooperate with her after it appointed her to work with mother.

The record reflects that the trial court accepted mother's therapist as an expert on abuse, and heard her testimony that PDSS contacted her in December 2002 to work with mother because of her expertise with victims of abuse. The trial court also heard her testimony that PDSS refused to let her speak with the children's therapists, to see their medical records, or to observe mother with the children during her visits. There is no evidence in the record that the trial court did not consider this testimony or her opinion that mother was "capable and ready to resume parenting her children."

As the finder of fact, the trial court determines the weight to be given to a witness' testimony, and has the discretion to accept or reject any of that testimony. Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (citation omitted). Moreover, we presume that the trial court knew the law and correctly applied it to the facts it determined based on the evidence presented to it. City of Newport News v. Winslow, 40 Va. App. 556, 580 S.E.2d 463 (2003).

IV.

Mother also contends that the trial court erred in permitting the testimony of the CASA worker for the children, contending that she had not been reappointed by the circuit court after having been appointed by the juvenile court pursuant to Code § 9.1-153.

Code § 9.1-153 authorizes the trial court to admit CASA reports as evidence and permits the CASA advocate who prepared the report to "testify if called as a witness." Under Code § 9.1-153,

the advocate is required to continue her association in each case to which assigned, unless relieved of those duties by the court or the program director.

Mother cites no authority that the CASA worker was required to be reappointed by the circuit court or be assigned anew by the program director, nor are we aware of any such authority. The record does not show that the assigned CASA worker had been relieved of her duties by the court or the program director. Absent such a showing, we conclude that her duties continued after mother's appeal to the circuit court. Moreover, because the statute clearly allowed her to be called as a witness, we find no error in the trial court's admitting her testimony.

She also argues that the trial court should have disregarded the CASA worker's testimony on the grounds that her opinion was motivated by "nationalistic prejudices" against mother.[3]

Evidence of any possible "nationalistic bias" against the mother on the part of the CASA worker, and we find none in the record, would not bar the admissibility of that testimony, but would go only to her credibility as a witness and the weight to be given by the trial court to that testimony. See Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

We find no error in the trial court's admitting the CASA worker's testimony regarding her opinion as to the children's best interests.

V.

Finally, mother asserts that the trial court erred when it applied "improper legal standards and burdens of proof and law" in making its findings and conclusions.

Mother failed in her brief to this Court to specify what legal standards or burdens of proof she contends that the trial court improperly applied. Moreover, she fails to provide any citation to

_____

[3] Mother argues that the CASA worker expressed her "nationalistic prejudices" in her statement at a prior hearing that "Ms. Nelson's children are American citizens and they should be here," when addressing whether the children's best interest would be served by returning to the Philippines in their mother's custody and care.

controlling legal authority in support of her position.  Rule 5A:20(e) requires the appellant's brief to include, among other things, the "principles of law, the argument, and the authorities relating to each question presented."  "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration."  <u>Buchanan v. Buchanan</u>, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).  Having presented no citations or authority in her brief in support of this question, mother has waived her claim of error that the trial court applied "improper legal standards and burdens of proof and law."  <u>See</u> Rule 5A:20(e).

 For the above reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>